**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie Krainock,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-22-08044-PCT-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Valerie Krainock's Applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act").[1] Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16), Defendant Social Security Administration Commissioner's Response Brief (Doc. 17), and Plaintiff's Reply Brief (Doc. 18). The Court has reviewed the briefs, Administrative Record (Doc. 12, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 25-40) and affirms the ALJ's decision for the reasons addressed herein.

///

---

[1] The relevant DIB and SSI regulations in this case are virtually identical, and the Court cites only the DIB regulations in the Order.  Parallel SSI regulations are found in 20 C.F.R. §§ 416.900-416.999 and correspond with the last two digits of the DIB citation (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

## I. BACKGROUND

Plaintiff filed applications for DIB and SSI on January 31, 2019, for a period of disability beginning on November 1, 2018. (R. at 25). Plaintiff's claims were denied initially on May 15, 2019, and upon reconsideration on October 17, 2019. (*Id.*) Plaintiff testified before an ALJ in a telephonic hearing regarding her claims on February 1, 2021. (*Id.*) The ALJ denied her claims on February 23, 2021. (R. at 25-40). On November 1, 2021, the Appeals Council denied her request for review of the ALJ's decision. (R. at 1-6). On March 21, 2022, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of migraines, degenerative cervical and thoracic disc disease with cervical stenosis, depression, anxiety, bipolar and post-traumatic stress disorder (PTSD). (R. at 28).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 40). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 29). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b)" with certain postural or environmental limitations and concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 31, 40).

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable

person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(d). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(e). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

### III. ANALYSIS

Plaintiff raises one argument for the Court's consideration: whether the ALJ failed to provide specific, clear, and convincing reasons to reject Plaintiff's symptom testimony.

(Doc. 16 at 3). Plaintiff also requests this Court to remand the case for an award of benefits. (Doc. 16 at 15-17).

### A. The ALJ provided specific, clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to reject the Plaintiff's symptom testimony and the Court should, therefore, remand for an award of benefits. (Doc. 16).

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112.

For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's decision accounted for Plaintiff's impairments encompassing migraines, degenerative cervical and thoracic disc disease with cervical stenosis, depression, anxiety, bipolar and post-traumatic stress disorder (PTSD). (R. at 28). Plaintiff asserted at her February 2021 hearing that she suffered from migraines, dizziness and fainting, anxiety, bipolar disorder, and impairments related to her back and neck. (R. at 59, 65). Plaintiff testified that she experienced migraines four to five times per month that last for four to five hours at a time, contends with back and neck issues that result in stiffness and pain three to four times per week and last for an hour or two, and daily occurrences of dizziness and fainting that last for ten minutes at each instance. (R. at 61-62, 64). Plaintiff also testified that she has daily bouts of anxiety at least three times a day that last for about two hours and cause her to stop all activity and get away from people because any type of movement can scare her. (R. at 66-68).

The ALJ considered the level of Plaintiff's medical issues and found that her "impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence," including her testimony regarding activities of daily living and her conservative treatment. (R. at 33). The ALJ then cited to specific examples in the record to support his findings. Plaintiff, however, argues that the ALJ failed to identify specific testimony and identify evidence that contradicted the Plaintiff's testimony. (Doc. 16 at 13-15). The Court is not persuaded by Plaintiff's arguments. It is apparent from the record as a whole that the ALJ used a multitude of specific reasons which are supported by the evidence to discount the Plaintiff's symptom testimony.

The ALJ acknowledged in his decision that Plaintiff was afflicted with multiple impairments, but found they were not as disabling as alleged. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount her testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680. With respect to Plaintiff's mental health impairments, Plaintiff alleged issues with depression, anxiety, bipolar and PTSD. The ALJ cited to Plaintiff's medical record to show that she had been undergoing treatment for anxiety and bipolar disorder for more than ten years. (R. at 33, 560). Despite this diagnosis, Plaintiff maintained full-time employment from 1990 until her onset date in 2018. (R. at 28, 33). In December 2018, Plaintiff acknowledged during an examination that her bipolar disorder had been treated the same way with the same medications for many years. (R. at 503). Plaintiff's work history is a relevant factor for consideration by the ALJ regarding Plaintiff's functional limitations given the similar mental health symptoms she experienced before and after her proposed disability onset date. 20 C.F.R. § 404.1529(c)(3)(vii); see also *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ acknowledged that in July 2018, prior to Plaintiff's onset date, she experienced an increase in mental impairments due to "situational stressors" that involved a pending divorce, suspended use of her medications, and a move with homelessness. (R. at 33, 35, 381, 384, 636, 646). During her emergency room treatment, Plaintiff received medication to reduce her anxiety. (R. at 392). By November 2018, Plaintiff's listed onset date, a psychiatric exam showed Plaintiff exhibited normal mood and affect, normal recent and remote memory, good judgment, and full orientation. (R. at 490). In January 2019, Plaintiff denied having any anxiety. (R. at 453). The ALJ acknowledged that in May 2019, although Plaintiff informed providers during an examination that her mental symptoms stabilized and she was living with her parents socializing with them at bars three times per week, she received an initial denial of her social security benefits in May 2019 which again caused stress and later led to homelessness with her son and limited her access to medication which subsequently required Plaintiff's re-hospitalization. (R. at 36, 633-34, 640, 727, 824). However, treatment notes indicated that Plaintiff was feeling better in June

and July 2019 and again exhibited normal speech and thought patterns, good judgment, normal mood, fair concentration, and was stable, alert and oriented. (R. at 36, 758, 772, 789-90). Although examinations in August and September 2019 showed Plaintiff had a depressed mood, treatment notes indicate it seemed situational and she continued to exhibit good judgment, insight, and concentration. (R. at 814, 824, 829).

Plaintiff testified that she had stable housing as of October 2019, and the ALJ cited that Plaintiff's mental health complaints and treatment diminished for the next year. (R. at 36). The ALJ cited to treatment notes from May, August and September 2020 that indicated Plaintiff was doing better than before and showed improved memory and mental health symptoms. (R. at 34, 36, 852, 857, 863). In August 2020, Plaintiff scored a 29/30 on a mini mental status examination. (R. at 34, 909). Plaintiff reported that her medication was helpful, she was attending counseling, and working out with a trainer. (R. at 36, 890-91, 900). In January 2021, Plaintiff indicated that she was not depressed, but worried over her upcoming SSI hearing. (R. at 36, 886). The ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). While Plaintiff argued that mental health symptoms can wax and wane during treatment, the Court does not agree with that analysis in the present case. (Doc. 16 at 12). It is clear from the ALJ's written decision that he properly accounted for Plaintiff's medical record in its entirety. The ALJ discussed instances when Plaintiff experienced exacerbated symptoms; however, based upon her treatment records, the ALJ found that overall, Plaintiff was able to successfully manage her impairments with medication and conservative treatment during the relevant period of alleged disability. (R. at 35).

Plaintiff furthers her argument by claiming that diminished symptoms in a mental disorder is consistent with bipolar disorder and thus supports a finding of disability according to Listing 12.04(C).[2] As Commissioner points out in their brief, Plaintiff's

---

[2] Listing 12.04(C) states that a listing in this category is "serious and persistent" if there is

argument is misplaced as it only focuses on the first part of the listing requirement and does not fulfill *both* parts of the listing requirement. (Doc. 17 at 14). Plaintiff has failed to show through the medical evidence that her mental impairments cause her marginal adjustment despite participation in prescribed treatments. Based upon the evidence, the ALJ appropriately concluded that Plaintiff's mental symptoms returned to stable levels with proper housing, exercise, and medication adjustments. (R. at 36).

Regarding Plaintiff's physical impairments, the ALJ also found that Plaintiff's physical symptoms were unsupported by the medical record evidence. Plaintiff alleged issues with dizziness, fainting, memory loss and headaches. Plaintiff sought treatment for fainting in November 2018, and although an MRI showed lesions on her brain, her providers ruled out multiple sclerosis and imaging showed no acute findings, while a CT scan was unremarkable. (R. at 33-34, 574, 588, 599). An MRI was conducted in April 2019 after Plaintiff complained of a headache, but her physician noted it was most likely a migraine. (R. at 33-34, 443). Plaintiff underwent injection therapy for treatment of her headaches, and she responded well. (R. at 34, 435, 534). The ALJ found that Plaintiff's medical record showed fewer complaints for dizziness, fainting, memory loss and migraines after April 2019. (R. at 34). The ALJ also noted it was questionable as to whether Plaintiff continued with injection therapy after changing providers in 2020. (R. at 34). Additionally, the ALJ noted that Plaintiff's new providers indicated she was doing better than before and there does not appear to be any concern related to these ailments among her new providers. (R. at 34, 469-71, 574-606, 849-84, 906-07).

The ALJ's analysis further discussed that Plaintiff's symptoms of back and neck pain were not supported by the medical record. Plaintiff obtained an MRI in November

---

documented evidence for over two years, and "(1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; **and** (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." 20 C.F.R., Part 404, Subpart P, Appendix 1, Part A, Listing 12.04(C) (emphasis added). Marginal adjustment is defined as, "your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."

2018 which indicated only mild to moderate spinal stenosis. (R. at 33, 587). The ALJ found that Plaintiff's orthopedist indicated she had no compression of her spinal cord and no symptoms that required more than annual observation. (R. at 34, 840, 931). An examination in December 2020 showed Plaintiff had normal range of motion, good reflexes, no atrophy or weakness, and her physician did not limit her personal training workouts, her ability to work, and recommended only annual observations. (R. at 35, 885, 931). Further, the ALJ noted that Plaintiff testified her back and neck pain were managed by taking her prescribed medication. (R. at 32, 63). The ALJ then discussed how Plaintiff's testimony was inconsistent with her alleged back pain, neck grinding and limited mobility when she testified her symptoms abate with medication and she can work out at a gym three times per week. (R. at 32). The ALJ's conclusion that the objective medical evidence does not fully support Plaintiff's allegations is reasonable. *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (reiterating that the substantial evidence standard of review is highly deferential).

In consideration of Plaintiff's daily living activities, the ALJ acknowledged in his decision that Plaintiff's daily activities suggest her "symptoms are not as severe as she has alleged." (R. at 30). *See Lingenfelter*, 504 F.3d at 1040. The ALJ cited that Plaintiff could handle self-care and personal hygiene, prepare meals, perform chores that included laundry, cleaning her kitchen, bedroom and bathroom, and she could shop in stores every other day. (R. at 30-31, 295-96). Plaintiff testified she can drive but does not presently do so since she does not own a car; however, she stated she can take a public bus. (R. at 74-75). Plaintiff further testified that she worked out in a gym with a personal trainer three times a week for forty-five minutes per session. (R. at 30, 75-76). Plaintiff also reported going to bars three times a week with her parents. (R. at 36, 640). However, Plaintiff claimed she had difficulty counting money and following recipes, had a fear of public places and a need to isolate. (R. at 32, 65-72, 75-76, 295-96). "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating

impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694. Thus, the ALJ's finding that Plaintiff was not as limited as she alleged was reasonable.

Although Plaintiff's main argument would like the Court to find that the ALJ failed to identify specific testimony and evidence that contradicted her testimony, the Court does not agree. (Doc. 16 at 14-15). Moreover, Plaintiff's argument that her limitations direct a finding of disability under SSR 85-15 due to her "substantial loss in ability to perform a basic work activity on a sustained basis" must also fail. (Doc. 16 at 7). The ALJ used specific, clear, and convincing reasoning throughout the discussion of his decision to support a non-disability finding. While Plaintiff points to specific lines of testimony in an attempt to support her cause, "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Additionally, if an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned." *Alaska Dept. of Edvtl. Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004); *See Brown-Hunter*, 806 F.3d at 492 (applying this standard to social security).

Plaintiff's arguments only seek to offer alternative interpretations of the evidence, which the Court does not support. *See Burch*, 400 F.3d at 679. Given the scope of the record, the ALJ properly relied upon objective medical evidence to find the Plaintiff's allegations were inconsistent with the record, the effectiveness of Plaintiff's conservative treatments for her impairments, and Plaintiff's daily activities to discount Plaintiff's symptom testimony. There is sufficient evidence present to enable this Court to reasonably discern the ALJ's path to conclude that his decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Therefore, the Court finds the ALJ did not err in rejecting Plaintiff's pain and symptom testimony. The ALJ provided specific, clear, and

convincing reasons to dismiss Plaintiff's claims and those reasons were supported by substantial evidence.

## IV.  CONCLUSION

The Court finds that substantial evidence supports the ALJ's nondisability determination. The ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence, and properly considered the medical opinion evidence of record. Therefore, the Court finds that the ALJ did not err in his decision, which is based on substantial evidence. The Court need not reach the merits of Plaintiff's request to remand for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 10th day of April, 2023.

_____
Honorable Susan M. Brnovich
United States District Judge